## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARIGRACE L. KEMSKE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 12-1258-LPS |
| | : | |
| JOHNSON CONTROLS, INC., | : | |
| | : | |
| Defendant. | : | |

Marigrace L. Kemske, Pro Se, Smyrna, Delaware.

     Plaintiff.

R. Stokes Nolte and Carmen N. Couden, Esquires, Reilly Janiczek & McDevitt PC, Wilmington, Delaware.

     Attorneys for Defendant.

## MEMORANDUM OPINION

July 2, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    INTRODUCTION

Plaintiff Marigrace L. Kemske ("Plaintiff" or "Kemske") filed this action against

Defendant Johnson Controls, Inc. ("Defendant" or "JCI") alleging employment discrimination by

reason of sex pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42

U.S.C. § 2000e, *et seq.* The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Presently

before the Court is Defendant's motion for summary judgment (D.I. 17), opposed by Plaintiff.[1]

For the reasons that follow, the Court will grant Defendant's motion.

## II.    PROCEDURAL BACKGROUND

Kemske's employment with JCI was terminated on September 7, 2010. (D.I. 20 at App.

137) On June 20, 2011, Kemske filed a charge of discrimination against JCI with the Equal

Employment Opportunity Commission ("EEOC"), alleging discrimination by reason of sex in

connection with her discharge. (*Id.*) Therein, Kemske states that JCI's reasons for her discharge

were that she had harassed another employee on more than one occasion. (*Id.*) In addition, the

charge of discrimination states that JCI took into consideration that Kemske had been absent

from work. (*Id.*) The charge of discrimination further states that male employees were given

preferential treatment and, particularly, that Kemske was treated differently than male employees

who engaged in the same conduct as her, but were not terminated. (*Id.*) Following its

investigation, the EEOC was unable to conclude that the information obtained established

---

[1]Kemske filed a response to the motion for summary judgment that consisted mainly of exhibits with little to no argument, making it difficult to determine her positions on the issues raised by JCI. When JCI pointed out the deficient response, Kemske filed a sur-reply in derogation of the Local Rules of this Court. *See* D. Del. LR 7.1.2. However, given Kemske's status as a *pro se* litigant, the Court will consider the sur-reply found at D.I. 26.

violations of the statute and closed the file. (*Id.* at App. 139) The EEOC's right to sue letter is dated July 2, 2012. (*Id.*) Kemske filed the instant lawsuit on October 3, 2012, alleging discriminatory acts occurred when she was wrongfully terminated and that JCI created and perpetuated a hostile work environment. (D.I. 1) JCI moves for summary judgment, which Plaintiff opposes. (D.I. 17, 24, 26)

## III. FACTUAL BACKGROUND

Kemske was hired by JCI in July 1996 as an assembler and was later promoted to truck loader. (D.I. 20 at App. 84, 137) JCI manufactures automotive and marine batteries at a facility located in Middletown, Delaware. (*Id.* at App. 2, 13) The facility employs approximately 145 employees, many of whom are represented by the International Union United Automobile, Aerospace and Agricultural Implement Workers of America (the "Union"). (*Id.* at App. 2, 13, 49-50) Some of the terms and conditions of employment for represented employees are governed by a collective bargaining agreement ("CBA") between JCI and the Union. (*Id.* at App. 2, 13, 19-31, 50, 86)

JCI publishes Equal Employment Opportunity ("EEO") and No Harassment policies prohibiting discrimination or harassment in any form or degree in the workplace; maintains a workplace violence policy, which prohibits, among other things, threats of harm, intimidation, and coercion; and has an ethics policy, which states that neither physical nor mental abuse or harassment will be tolerated. (*Id.* at 3, 14, 51, 56-58, 60-61) In addition to these policies, JCI has established plant rules that govern employee conduct in the workplace. (*Id.* at App. 2, 13, 35-38, 50) Kemske was provided a copy of JCI's plant rules, as well as copies of the EEO and No Harassment policies, during her new hire orientation. (*Id.* at App. 90, 94, 98-100)

2

Because some infractions are considered more serious than others, JCI divides plant rule violations into three categories, according to severity: A-rule, B-rule, and C-rule violations. (*Id.* at App. 2, 13, 35-38, 50-51) The least serious offenses are A-rule violations such as idleness, negligence on the job, and frequent tardiness or absences. (*Id.* at App. 2, 13-14, 35-38, 50, 93) A-rule violations normally result in a four-step progressive disciplinary process, with termination as the fourth and final step. (*Id.*) Next, in the level of serousness are the B-rule violations, such as hindering or limiting production or horseplay, and they typically result in a two-step progressive disciplinary procedure involving a final warning for the first violation and discharge for the second. (*Id.* at App. 3, 14, 35-38, 50) The most serious offenses are C-rule violations such as disobedience, insubordination, threatening or intimidating behavior, or the use of foul or abusive language directed toward fellow workers, visitors, members of management, supervisors, or customers. (*Id.* at App. 3, 14, 35-38, 51, 92-93) Employees who commit C-rule violations are subject to immediate discharge. (*Id.*) An employee who has a dispute with JCI, including one relating to discharge from employment, may file a written grievance, which will be handled in accordance with the CBA's grievance and arbitration procedures. (*Id.* at App. 2, 13, 25-28, 50, 82)

In December 2009, Kemske's supervisor, Heath Yarnall ("Yarnall") made Sharon Adams ("Adams"), the JCI Health and Safety Supervisor at the Middletown plant, aware of an incident in which Kemske had walked up to co-worker Rick Larimore ("Larimore") (an individual with

3

whom Kemske had had a brief consensual relationship), called him names, and yelled at him. (*Id.* at App. 4-5) A Ruan Transport² contractor witnessed the incident. (*Id.* at App. 4)

Yarnall told Adams that Kemske claimed Larimore was harassing her and that he got away with it more than other employees did. (*Id.*) Adams investigated the incident and Kemske's allegations of favoritism. (*Id.* App. 4-6) Adams found no evidence of harassment by Larimore or favoritism shown to him by JCI and, further, that Kemske herself had engaged in inappropriate behavior, including directing false allegations and abusive language at Larimore. (*Id.* at App. 6) Adams concluded that Kemske had repeatedly directed unwelcome remarks and inappropriate comments to Larimore over several months, in violation of JCI's No Harassment policy and in violation of plant rule C-19.³ (D.I. 19 at App. 156; D.I. 20 at App. 6)

The applicable portion of the C-19 rule describes the violation as "threatening, intimidating, or the use of foul or abusive language directed towards fellow workers, visitors, members of management, supervisors, or customers, or that would hinder the welfare of the company." (D.I. 20 at App. 36-37) The penalty for C-rule violations is immediate discharge, and Kemske's employment could have been terminated by JCI at that time. (D.I. 20 at App. 6) However, in recognition of Kemske's long service with JCI, a "last chance agreement" was entered into on December 31, 2009 among JCI, Kemske, and the Union to continue Kemske's employment on a last chance basis. (*Id.*)

---

²Ruan Transport is the trucking company for JCI, and it maintains an office at the Middletown facility. (D.I. 20 at App. 101)

³According to Adams, this was not the first time that Kemske had engaged in inappropriate behavior in violation of rule C-19. (D.I. 19 at App. 152-154; D.I. 20 at App. 5)

4

Under the terms of the agreement, Kemske agreed: (1) to stop all unprofessional conversations and inappropriate conduct toward Larimore and any other co-worker or member of management; (2) to enroll in JCI's Employee Assistance Program ("EAP") and complete the program outlined upon her enrollment; and (3) that if she again violated JCI's No Harassment policy or if she failed to complete the EAP program, she would be automatically and immediately discharged. (D.I. 19 at App. 158-160; D. I. 20 at App. 6-7) In addition, the Union agreed that if Kemske did not comply with the terms of the agreement, Kemske's discharge would be treated as a termination for just cause, and it would not be grieved or arbitrated. (D.I. 19 at App. 158-159; D.I. 20 at App. 7)

On September 2, 2010, Adams was made aware of a complaint by Larimore about the behavior of Kemske the prior evening when Kemske saw him talking to Janice Pierce ("Pierce") (a Ruan contractor who was then Larimore's girlfriend). (D.I. 20 at App. 7) Kemske started clapping out loud, shaking her butt, and yelling "encore, encore." (*Id.*) Larimore complained that Kemske told other employees that he was "demonic" and she made inappropriate remarks about Larimore's dating relationship with Pierce. (*Id.*) Kemske was immediately suspended and Adams investigated the allegations. (D.I. 19 at App. 165, 167-169; D.I. 20 at App. 7, 107-109; D.I. 25 at 396-98) Kemske admitted to Adams that she yelled "encore, encore" but denied it was directed at Larimore, while other witnesses indicated that Kemske was clapping and yelling "encore" while looking and yelling in the direction of Larimore and Pierce. (D.I. 19 at App. 165, 167-169; D.I. 20 at App. 7-8, 100) Witnesses also indicated that Larimore kept quiet during the incident, and it was Kemske who made the "baiting comments." (*Id.*) In addition, Larimore

5

provided a copy of a note that Kemske had left for him at work several months earlier. (D.I. 20 at App. 8, 114-115)

Upon completion of the investigation, JCI concluded that Kemske had violated its policies and plant rules. (D.I. 20 at App. 8) On September 7, 2010, Kemske's employment was terminated, purportedly based upon her harassing behavior toward Larimore and in violation of the December 31, 2009 last chance agreement, plant rule C-19, and JCI's No Harassment policy. (*Id.* at App. 8, 16) According to Adams, although Kemske's September 6, 2010 notice of disciplinary action form listed some prior discipline for attendance-related violations, Kemske was not terminated for violating JCI's attendance policy. (*Id.* at App. 8-9, 16, 106-107) The JCI notices of disciplinary action forms Kemske received for attendance violations indicate that she never received more than a "written discussion" or "warning" from JCI in connection with the attendance violations. (D.I. 19 at App. 185-190)

Exhibits submitted by the parties indicate that both men and women: (1) were disciplined or terminated for harassment (D.I. 24 at 584, 586, 784-872); (2) received last chance agreements (*id.* at 391, 791, 892); and (3) received write-ups and were disciplined for absences (D.I. 19 at App. 184-244; D.I. 24 at 721, 780, 807).

## IV. SUMMARY JUDGMENT

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

6

586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute

7

between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## B. Discussion

JCI moves for summary judgment on the grounds that: (1) Kemske failed to exhaust her administrative remedies for the hostile work environment claim; (2) some or all of her claims are barred by the applicable statute of limitations; (3) Kemske cannot establish a prima facie case of sex discrimination or show that JCI's legitimate, non-discriminatory reason for her termination was pretextual; and (4) the sex harassment claim must be dismissed because the claim is untimely, Kemske was not subject to a hostile work environment, and there is no basis on which to hold JCI liable for sexual harassment.

8

## 1.    Exhaustion of Administrative Remedies

JCI moves for summary judgment on the issue of a hostile work environment on the
grounds that Kemske failed to exhaust her administrative remedies. Kemske responds that she
never claimed sexual harassment; she claims sex discrimination. (D.I. 24 Exs. P6, P8a and b)

The filing of a charge with the EEOC and receipt of a notice to sue letter are prerequisites
to a civil action under Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798
(1976). The parameters of the federal court action are "defined by the scope of the EEOC
investigation which can reasonably be expected to grow out of the charge of discrimination."
*Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (internal quotation marks
omitted); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984)
("[A] district court may assume jurisdiction over additional charges if they are reasonably within
the scope of the complainant's original charges."). When a claim has not specifically been
presented in an administrative charge, the test for whether that claim may be presented to the
District Court is "whether the acts alleged in the subsequent Title VII suit are fairly within the
scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82
F.3d 1291, 1295 (3d Cir. 1996) (internal quotation marks omitted).

After a plaintiff files a charge of discrimination against an employer and subsequently
receives a right-to-sue letter, a plaintiff's "ensuing suit [in district court] is limited to claims that
are within the scope of the initial administrative charge." *Barzanty v. Verizon Pa., Inc.*, 361 F.
App'x 411, 414 (3d Cir. Jan. 20, 2010) (citing *Antol*, 82 F.3d at 1296). Accordingly, a plaintiff
cannot "greatly expand an investigation simply by alleging new and different facts when" later
bringing claims in the District Court. *Hicks*, 572 F.2d at 967.

9

In her charge of discrimination, Kemske alleged: (1) that she was hired as an assembler and later promoted to truck loader, she is female, and was terminated; (2) the reason given for her termination was that she harassed another employee on December 22, 2009, and on September 1, 2010, in violation of a last chance agreement, and that JCI took into consideration two prior absences; (3) males are given preferential treatment, and she disputes that she harassed another employee because foul language is commonly used throughout the company by both males and females, but when she used it she was accused of harassment; (4) she believes that she was discriminated against because of her gender in that JCI accorded her different treatment when it terminated her employment for harassment and use of foul language but allowed others to use foul language; and (5) males are not terminated when they fail to call in for work and are no-shows or take long breaks. (D.I. 20 at App.137) Kemske first raised the issue of a hostile work environment in her complaint filed in this Court on October 3, 2012, wherein she alleges other acts of discrimination occurred in "creating and perpetuating a hostile work environment." (D.I. 1 at ¶ 10)

The Court must decide whether a hostile work environment claim is within the fair scope of Kemske's original EEOC filing. To succeed in a sexual harassment claim based upon a hostile work environment, Kemske must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability. *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) (overruled in part on other grounds by

10

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *see also Miller v. Thomas Jefferson Univ. Hosp.*, ___ F. App'x ___, 2014 WL 1690447, at \*4 n.6 (3d Cir. Apr. 30, 2014).

Even liberally interpreting Kemske's charge of discrimination, a hostile work environment claim is not within the scope of the charge. The Third Circuit held in *Anjelino v. New York Times Co.*, 200 F.3d 73, 94-95 (3d Cir. 1999), that a hostile work environment claim was within the scope of an initial EEOC charge because the charge alleged that the plaintiff was subjected to an "abusive atmosphere," a phrase which may be interchangeable with "hostile work environment." Here, there is no language in Kemske' charge or discrimination that gives rise to a hostile work environment claim. The charge of discrimination identifies only allegations of gender discrimination relating to Kemske's employment at JCI in general and, specifically, her September 2010 termination. Kemske provided no facts that suggest a hostile work environment, nor did not check the box indicating her charge was a "continuing action." *See e.g.*, *Barzanty*, 361 F. App'x at 414-15 (discharged employee failed to exhaust her administrative remedies with respect to her Title VII hostile work environment claim, where employee's charge of discrimination identified only an allegation of gender discrimination relating to her discharge, and it did not set forth any facts suggesting an abusive workplace or hostile work environment).

Accordingly, the Court will grant JCI's motion summary judgment on the issue of failure to exhaust administrative remedies with respect to the hostile work environment claim.[4]

---

[4]Even had Kemske exhausted her administrative remedies, no reasonable jury could find for her on the issue of a hostile work environment. During her deposition, Kemske testified that a hostile work environment existed because: (1) Larimore was allowed to take extended work breaks and given time off in excess of his accrued vacation days; (2) Larimore and Ruan workers began locking the door to the Ruan office; (3) Larimore was "being nasty" and refused to help her or get her water when she requested it; (4) Larimore kissed his new girlfriend at work; (5) Larimore was in the Ruan office after his work hours; (6) Kemske's supervisor told her to mind her own business when she inquired about Larimore's absences; (7) the Ruan yardman was

11

## 2. **Statute of Limitations**

JCI moves for summary judgment on all claims, except the wrongful discharge claim, on the grounds that they are barred by the applicable statute of limitations. Plaintiff's opposition is confusing at best, but it does not appear that she opposes summary judgment on this issue.

A Title VII plaintiff in a "deferral state" such as Delaware must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *See Lacy v. National R.R. Passenger Corp.*, 254 F. App'x 934, 936 (3d Cir. Nov. 26, 2007). JCI argues that, because Kemske filed her EEOC charge of discrimination on June 20, 2011, only acts occurring within the previous 300 days – that is, on or after August 24, 2010 – may be considered by the Court because the EEOC charge does not claim there was a continuing violation.

Under the continuing violation theory, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the Court will grant relief for the earlier related acts that would otherwise be time barred.'" *Cowell v. Palmer Twp.*, 263 F.3d 286, 292

---

"obstinate" with her; and (8) some people were allowed to go off and not do their assigned work while others were forced to stay and work. (D.I. 20 at 77, 81-83, 101-02, 104, 120-21) JCI presented evidence that many of Larimore's absences were due to intermittent FMLA leave. (*Id.* at App. 16) In addition, Larimore received disciplinary actions related to his attendance. (D.I. 19 at App. 192-98; D.I. 20 at App. 16) Finally, the record reflects that JCI investigated the claims of harassment, concluded that it was Kemske, not Larimore, who had engaged in harassing behavior but, nonetheless, advised Larimore to behave professionally at work. (D.I. 19 at App. 156; *see also Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 954 (7th Cir. 2005) (prompt investigation is "a hallmark of reasonable corrective action")) More generally, none of what Kemske alleges – individually, or collectively – appears to amount to severe or pervasive harassment. *See generally Jensen*, 435 F.3d at 449 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)) (stating Title VII does not represent "'a general civility code for the American workplace'").

12

(3d Cir. 2001) (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Cowell*, 263 F.3d at 293 (internal quotation marks omitted). The continuing violation doctrine has no applicability to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" because "[e]ach incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable 'unlawful employment practice.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see also Zankel v. Temple Univ.*, 245 Fed. App'x 196, 199 (3d Cir. Aug. 20, 2007). In the context of employment discrimination, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in a timely filed charge." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

Kemske's Title VII action stems from JCI's determination that she violated the last chance agreement as well as the termination of her employment on September 7, 2010. The last chance agreement was the result of the December 2009 incident after it was determined that Kemske, and not Larimore, was the harasser in violation of JCI's work rules and regulations. Because the September 2010 termination is a separate employment practice, the continuing violation theory is inapplicable to other prior acts mentioned in the EEOC charge that fall outside the 300 day time-frame.

Kemske's EEOC charge of discrimination was filed on June 20, 2011. Therefore, any claims that accrued prior to August 24, 2010 are time-barred. Based upon the foregoing, the Court will grant JCI's motion for summary judgment that seeks dismissal of all claims that accrued prior to August 24, 2010 as time-barred.

13

### 3. Sex Discrimination

JCI seeks summary judgment on the grounds that Kemske has failed to establish a prima facie case of sex discrimination and, further, has failed to show that Defendant's proffered explanation for the actions it took is pretextual. In opposing the motion, Kemske responds that: (1) she has submitted evidence that men are treated more favorably than women; (2) she has no inefficiency on the job, while certain male employees do; (3) she performed her job as well as other truck loaders; (4) the affidavits submitted by JCI are either false or embellished; and (5) she disagrees with the findings of the December 2009 and September 2010 investigations by JCI. (*See* D.I. 24; D.I. 24 Exs. P7, 15; D.I. 26; D.I. 26 at 7)

Kemske has provided no direct evidence of discrimination. Thus, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Kemske must first establish a prima facie case of discrimination by coming forward with evidence from which a reasonable factfinder could find that: (1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If the defendant does so, then the burden shifts again to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804.

14

It is undisputed that Kemske is a female and a member of a protected class and that she suffered an adverse employment action when her employment was terminated; hence, the first and third prongs are satisfied. With regard to the second prong, JCI argues that Kemske did not meet the legitimate expectations of JCI, given that she violated company and plant rules as well as the last chance agreement. Kemske counters that she held the position of truck loader and had no inefficiency on the job. JCI does not contend that Kemske lacked the requisite qualifications, education, experience, or skills for the position from which he was terminated. In addition, JCI did not submit evidence that Kemske's violation of work rules and policies automatically rendered her unfit or unqualified for her position. Moreover, despite her previous violation of work rules, Kemske was not terminated, but instead had her employment continued on a last chance basis. (*See* D.I. 20 at App. 6) All of this reflects evidence that could reasonably support a finding that Kemske was qualified for the position she sought to retain. *See e.g.*, *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 463 (E.D. Pa. 2013) (when considering Title VII claim, Court must evaluate Plaintiff's qualifications by an objective standard).

To satisfy the fourth prong of the prima facie case, Kemske must establish "that similarly situated individuals outside the plaintiff's class were treated more favorably." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273-74 (3d Cir. 2010). In the alternative, Plaintiff must prove that she was "terminated under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999) (internal quotation marks omitted).

15

Kemske argues that similarly situated male employees were treated more favorably by JCI. The evidence of record, however, does not provide a reasonable factfinder a basis to agree with her. Instead, the record reflects that: (1) a male was immediately terminated for using foul or abusive language in violation of rule C-19; (2) a male was terminated for engaging in disobedience or threatening, intimidating behavior in violation of Rule C-19; (3) a male was terminated for violating plant rule C-19 and his last chance agreement; (4) a male was terminated for using inappropriate language in the presence of another employee; (5) women and men were disciplined or terminated for harassment; (6) women and men received last chance agreements; and (7) women and men received write-ups and were disciplined for absences. (*See* D.I. 19 at App. 184-248, 250, 252, 254; D.I. 24 at 391, 584, 586, 721, 780, 784-872, 892) Kemske has failed to satisfy the fourth element of her prima case.

In the alternative, even had Kemske made a prima facie case of sex discrimination, she has not produced evidence from which a reasonable factfinder could find that JCI's reason for its employment decision was a pretext for discrimination. Kemske must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the

16

proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (internal citations and quotation marks omitted).

JCI met its burden by articulating a legitimate, nondiscriminatory reason for terminating Kemske's employment. The record would support a finding that Kemske was terminated based upon her violations of JCI's No Harassment policy and Kemske's December 31, 2009 last chance agreement. Nothing before the Court contradicts JCI's proffered reason for terminating Kemske's employment. Nor is JCI's proffered reason for its action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003). Even construing the evidence in the light most favorable to Kemske, she has provided no evidence from which a fact-finder could either disbelieve JCI's articulated reason, or believe that a discriminatory reason was more likely than not the cause of the employment action. As there is no genuine dispute on the dispositive issue of whether JCI had a discriminatory motive, the Court will grant JCI's motion for summary judgment.

## V.    **CONCLUSION**

For the above reasons, the Court will grant Defendant's Motion for Summary Judgment (D.I. 17) An appropriate Order follows.

17